### NEGLIGENCE IN DRIVING ONTO A RAILROAD CROSSING.

Circuit Court of Summit County.

THE BALTIMORE & OHIO RAILROAD COMPANY v. ERNEST S.
DICKINSON.[*]

Decided. 1906.

*Railroad Crossing—Contributory Negligence—Evidence that Railroad is Operating Trains.*

1. It is sufficient evidence that one railroad company is operating trains over the line of another railroad company, as lessee, or otherwise, that it issued a bill of lading for freight consigned to it at a station on the line, published and issued a time table of trains thereon, representing them to be its own trains, and hired and paid a doctor to treat a person injured thereon.

2. One who drives into a deep cut leading to a railroad crossing with a lumber wagon which makes so much noise that he can not hear an approaching train, and who knows that he can not see one while in the cut, is guilty of contributory negligence if he does not slow down his horses as he emerges from the cut upon the track, to see if a train is approaching.

*Allen, Waters & Andress,* for plaintiff.
*Rial M. Smith,* contra.

---

[*]Affirmed without opinion, *Dickinson v. B. & O. R. R. Co.,* 77 Ohio State, 639.

Marvin, J.; Winch, J., and Henry, J., concur.

Dickinson brought a suit against the Baltimore & Ohio Railroad Company and the Cleveland Terminal & Valley Railroad Company. He sets out that a line of railroad extending south from the city of Cleveland and through the township of Brecksville, in Cuyahoga county, is owned by the Cleveland Terminal & Valley Railroad Company; that that road is leased to and operated by the Baltimore & Ohio Railroad Company; that on the 24th day of April, 1903, the plaintiff below, Dickinson, was driving along a public highway in the township of Brecksville, which crosses the line of railroad already spoken of at what is known as Vaughan's Crossing, that by reason of the negligent manner in which a train was operated he was struck and injured while making that crossing over the road. He complains of three acts of negligence on the part of the railroad company: *First,* that it failed to keep gates or station a flagman or watchman at the crossing, which he says was a very dangerous crossing. *Second,* that the railroad company was negligent in that it ran its train at the rate of more than forty miles an hour at this place on its line, and that to run a train at that rate of speed at such a crossing was negligence. *Third,* the company was negligent in that it failed to sound the whistle and ring the bell in pursuance of the statute which requires the whistle to be sounded and the bell to be rung. Upon the trial of the case, however, the charges of negligence for failing to keep the gates and a flagman was dropped, and the charge of negligence for running the train at a high rate of speed was taken out of the case, so that there remained the charge of negligence that the company failed to give the signal which it should have given. The result of the trial in the court of common pleas was a verdict for the plaintiff below, Dickinson. A judgment was entered upon that verdict, and a motion to set aside the verdict and grant a new trial was overruled.

The Baltimore & Ohio Railroad Co. denied that it was the lessee of this line of road and that it was operating the road. Each of the defendants denied that there was any negligence on its part, and charged that there was negligence on the part of

the plaintiff below contributing to or causing the injury which he sustained. The result, as I have said, was a verdict for the plaintiff below, and that verdict was against the Baltimore & Ohio Railroad Co. only. The jury returned a verdict for the Cleveland Terminal & Valley Railroad Company, so that it is the Baltimore & Ohio Railroad Co. only that comes here claiming error to its prejudice in the trial in the court below.

It is urged on the part of the plaintiff in error that there was no evidence introduced in the trial tending to show that the Baltimore & Ohio Railroad Company was the lessee of the line of road and operated it. In this we think the plaintiff in error is wrong. There was evidence that showed that and from which the jury might find that the Baltimore & Ohio Railroad Company was operating this railroad under some contract with the Cleveland Terminal & Valley Railroad Company. There was the evidence contained in Exhibit K, at page 211, which is a bill of lading issued by the Baltimore & Ohio Railroad Company for freight consigned to it at Boston Mills, a station on the line of the Cleveland Terminal & Valley Company.

At page 138 of the bill of exceptions there appears Exhibit J, which is a time table folder shown to have been issued by the Baltimore & Ohio Railroad Company, and that time table gives as one of the lines on which the times are specified in the exhibit, this line of the Cleveland Terminal & Valley Company. There is the testimony of Doctor Jacobs that he was the surgeon in the employ of the Baltimore & Ohio Railroad Company, and that he attended the plaintiff below for the injuries which he sustained, and was paid for it by the Baltimore & Ohio Railroad Company. From this evidence the jury might well have found that the Baltimore & Ohio Railroad Company was the lessee or was operating this line of road.

It is further urged that no negligence was shown on the part of the Baltimore & Ohio Railroad Company, or any company operating the train which struck and injured the plaintiff below. It is said that there is nothing in it to show that whoever operated that train was negligent. We think that that position is not well taken. The testimony of Mrs. Vaughan, who was at the

north end of her house near this crossing, tends to show that no whistle was blown until the engine had reached a point within a few hundred feet of the crossing, a point much nearer to the crossing than the statute requires the whistle to be blown, and much nearer to the crossing than a train, running at the speed at which that train was running, should have blown it.  Other witnesses testify to the same thing.  The man who was in the corn field with his team, whose name at this moment is not recalled, testified tending to show that the whistle was not blown, until the crossing was nearly reached.  It is true that is contradicted. The engineer says that he blew the whistle at the whistling post. The fireman says that the custom was to blow it there, and thinks it was blown; he first says it was blown, but upon cross examination he says: "We always blew it there."  Really it is evident from his examination that he does not certainly remember that the whistle was blown.  In this conflict of evidence the jury might well have found that the signals were not given as required and as they should have been given, so that we think the jury were not clearly wrong in finding that there was negligence on the part of the railroad company.

But it is said that clearly there was negligence on the part of the party injured, Dickinson, which should prevent a recovery, and on this question there is no principle of law involved in this case that is not familiar to every lawyer.  If Dickinson contributed by his negligence to this injury, or if his negligence alone caused his injury, then he was not entitled to recover. The situation as shown by his testimony is, that he was familiar with this crossing; that there was a cut in the highway leaving a bank on each side so high that when one was near to the railroad it was impossible to see a train on the track in either direction to the north or to the south for the line of railroad was north and south and the crossing was on an east and west road. At a point sixty or sixty-five feet back from the railroad it was possible to see along that track to the north for a little distance. Dickinson says he looked there, and if he had thought, he might have known he could look well there and not see a railroad train that was not near to this crossing; it might be further away than

his point of vision would reach along the track, or it might be nearer; the train might be coming at a point at which he could not see or else had already passed his point of vision. When he got nearer to the track, within forty feet, he knew, he says, when he looked he could not see along the track, south; he did not hear anything and he continued to drive on. He was familiar with this crossing, he knew that trains passed there frequently. He knew that by exercising his faculty of seeing he would not be able to see a train, if it was coming, when he was forty, and from that on until he was perhaps twenty feet from the track, yet he did not stop his team; he drove right on. He was driving with a lumber wagon which made so much noise that Mrs. Vaughan, who was at a distance in the neighborhood of one hundred feet from that wagon, heard it. He knew his wagon was making that noise, he knew trains were liable to come along there, he knew he could not see them if he looked and that, therefore, he must depend upon his sense of hearing for knowledge of the approach of a train, if one was coming. He seems to have relied upon his sense of hearing, of hearing the whistle, presuming that the railroad company would whistle, and that he would hear that whistle, and that the distance of the train from the crossing when the whistle was given would be such that he would certainly hear it.

Now, can any man who exercises proper caution in the care of himself and his family and his property say that it would do for one under such circumstances, knowing that he could not see a train if it was coming, and that his wagon was making so much noise that he would not hear, to drive on that way and then claim that he exercised ordinary prudence and care? It seems to us clear that the plaintiff below, by his negligence in not stopping his team, or at least holding his horses to such gait that the rumbling of his wagon would cease, directly contributed to his injury. We do not think that his negligence was the sole cause, but it contributed with the negligence of the Baltimore & Ohio Railroad Company, or whatever company was running that train, to bring about the injuries and that being so, the motion which was made at the close of the evidence offered

on the part of the plaintiff to take the case from the jury should have been sustained. It was not sustained, and there was error in that; and there was error in overruling the motion for a new trial on the ground that the verdict was not sustained by sufficient evidence and was against the weight of the evidence. That being so, we feel it our duty not only to reverse this judgment, but to enter the judgment which the court below should have entered for the Baltimore & Ohio Railroad Company, and that will be done and an exception noted for the defendant in error.